UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JAMES V PALMER**,<br><br>　　　　　Debtor.<br><br>**DARCY M. CRUM**,<br><br>　　　　　Plaintiff.<br>-vs-<br><br>**JAMES V PALMER**, **JIM PALMER TRUCKING**, **BLAZO GJOREV**, **MILAN KANGRGA**, **JOHN DOES 1-10**, and **XYZ CORP. 1-10**,<br><br>　　　　　Defendants. | Case No. **10-60099-7**<br><br><br><br><br><br><br>Adv No. **11-00001** |

## MEMORANDUM OF DECISION

At Butte in said District this 26th day of March, 2012.

Pending in the above-captioned Chapter 7 bankruptcy case and this adversary proceeding are the Trustee/Plaintiff Darcy M. Crum's ("Crum" or "Trustee") motion to approve compromise settlement[1], and objections thereto filed by Navistar Financial Corporation and Navistar Leasing Company (together "Navistar").  A hearing on approval of the settlement was held at Missoula on March 8, 2012.  Testimony was heard and exhibits were admitted, after which the Court took the matter under advisement.  After review of the pleadings, the record, and applicable law, for the reasons set forth below Navistar's objections will be overruled and the settlement approved

---

[1] Docket No. 34 in Adv. No. 11-1; and Dkt. 136 in Case No. 10-60099-11.

by separate Order.

This Court has jurisdiction of this Chapter 11 case and adversary proceeding under 28 U.S.C. § 1334. Approval of the proposed settlement is a core proceeding under 28 U.S.C. § 157(b)(2).

The Trustee Crum appeared and testified in support of the settlement, represented by attorney Trent M. Gardner ("Gardner") of Bozeman. Also testifying was Joe Kalafat ("Kalafat") who is president and chief executive officer ("CEO") of Jim Palmer Trucking[2] ("JPT"). The Debtor James V. Palmer ("Palmer") was represented by attorney James A. Patten of Billings. The Navistar entities were represented by attorney Steven M. Johnson ("Johnson") of Great Falls. Exhibits ("Ex.") 1, 2, and 3 were admitted[3].

## FACTS

Palmer owned JPT and other related business entities known as Jim Palmer Equipment, Inc. ("JPE"), Jim Palmer Equipment II, L.L.C. ("JPEII"), and Jim Palmer Equipment Logistics, LLC ("JPEL"). Defendants Blazo Gjorev ("Gjorev") and Milan Kangrga ("Kangrga") purchased Palmer's stock in JPT and the other related business entities. Kalafat testified that Gjorev and Kangrga bought Palmer's stock "technically" because the stock had no value unless the owner was running the company.

After the purchase JPT and Palmer entered into an employment agreement, Ex. 1, dated February 10, 2010. Ex. 1 provided for Palmer to be employed as an "ambassador" for JPT for a

---

[2] JPT is the debtor in Case No. 08-60922-11 filed in this district. JPT's plan of reorganization was confirmed and a final decree was entered in 08-60922-11 on July 19, 2010.

[3] Ex. 1, 2, and 3 are filed at Dkt. 142 in Case No. 10-60099-1.

term of 10 years at compensation set at $200,000 annually in equal monthly payments.

Kalafat testified that Palmer had no more specific duties under Ex 1 than he had been performing before the sale, and that Palmer performed the same duties for a time, but that Palmer eventually failed to fulfill his duties[4] and JPT terminated his employment. Palmer initiated wrongful termination litigation against JPT. Kalafat testified that JPT and Palmer settled the litigation with an agreement, Ex. 2, signed on December 6, 2010. Ex. 2 provided for payment to Palmer of a settlement in the amount of $450,000 payable in the amount of $50,000 per year in bi-weekly payments, and mutual releases. Kalafat testified that the payments called for under Ex. 2 were not secured.

Palmer filed a voluntary Chapter 7 bankruptcy petition on January 22, 2010. Crum was added to the case as Trustee on February 4, 2010. She employed Gardner and his law firm Goetz, Gallik & Baldwin, P.C., as attorney for the estate to prosecute this adversary proceeding on a contingency fee basis, plus costs, which was approved by the Court. She testified that the main case remains open pending this adversary proceeding, and that she has administered all other assets.

Crum initiated Adv. No. 11-1 on January 5, 2011, when she filed her complaint naming Defendants Palmer, JPT, Gjorev, Kangrga and several John Does. The facts alleged by the Trustee in the complaint include allegations that Palmer sold JPT and related companies to Gjorev and Kangrga for less than the companies' value in anticipation of filing bankruptcy, and that the employment agreement, Ex. 1, was an attempt by the Defendants to evade bankruptcy

---

[4]Kalafat testified that Palmer became very negative at work and assaulted one of JPT's owners.

law and compensate Palmer without having to claim assets in his personal bankruptcy.  The complaint sets forth five counts:  Count I (Avoidance and Recovery of Fraudulent Transfer) related to the sale of JPT by Palmer to Gjorev and Kangrga; II (Avoidance and Recovery of Fraudulent Transfer) related to the transfer of shares of JPE to Gjorev and Kangrga; III (Avoidance and Recovery of Fraudulent Transfer) related to the transfer of JPEII to Gjorev and Kangrga; IV (Avoidance and Recovery of Fraudulent Transfer) related to the transfer by Palmer to Gjorev and Kangrga of membership interests in JPEL; and V (Declaratory Relief and Turnover) related to the employment agreement between JPT and Palmer, Ex. 1.

  Trial in Adv. 11-1 was scheduled for trial until the trial was vacated when Crum filed a notice of settlement on January 25, 2012, resulting from a mediation.  Crum filed her motion to approve the settlement in Adv. No. 11-1 and the main case on February 9, 2012, accompanied by the Settlement Agreement and Release between Crum, JPT, Palmer, Gjorev, Kangrga, JPE, JPEII, and JPEL.  In the settlement agreement the parties agree to resolve and release all claims made or that could have been made by Crum against the Defendants in exchange for payment of the sum of $100,000 by March 6, 2012.  Crum testified that the parties arrived at the $100,000 settlement amount based on the mediation and what the parties were able to pay.

  Kalafat testified that JPT's trucking cash flow would be the sole source of the $100,000 payment, except there "might be a few dollars" from elsewhere.  He testified that Crum did not demand payment of the $100,000 from JPT alone and not from any other party.

  Navistar filed its objections on February 21, 2012.  On February 27, 2012, Navistar also filed a motion to shorten the time for discovery responses seeking to compel Crum and the Defendants to respond to Navistar's discovery requests about the difficulties in collection alleged

by the Trustee in support of her motion to approve the settlement[5]. Navistar objects that the proposed settlement punishes Navistar[6] and creditors under other confirmed chapter 11 plans[7] by depleting those debtors of cash while the Trustee and her professionals earn fees and creditors in this Chapter 11 case receive the distribution, and the alleged wrongdoers pay nothing and get a release. Navistar objects that the Trustee failed to show difficulty of collection from the alleged wrongdoers, Gjorev and Kangrga, who are not contributing anything. Lastly, Navistar contends that the Court may look beyond the benefit to the estate and consider the impact on the rights of third parties, citing *In re Sportstuff, Inc.*, 430 B.R. 170 (8th Cir. BAP 2010).

Kalafat and Crum both testified about the settlement.

**Kalafat Testimony.**

Kalafat testified that he was familiar with the Trustee's complaint, and that as president and CEO of JPT he concluded that there was a potential risk that JPT would be held liable in this adversary proceeding. He testified that it was "100% critical" that JPT resolve this litigation. Under cross examination by Navistar's counsel, Kalafat testified that JPT viewed the Trustee's

---

[5]The Court did not rule on Navistar's motion to shorten time to respond to discovery requests at the hearing. Crum objected to Navistar's motion to shorten time on the grounds Navistar is not a party in Adv. 11-1. Navistar responded that they have a direct pecuniary interest in the proposed settlement, and they request application of discovery rules under Montana Local Bankruptcy Rule 9014-1 and 11 U.S.C. § 105(a). Navistar was represented at the hearing on the settlement by counsel and cross examined the Trustee and Kalafat on the grounds and bases for the proposed settlement. As the Court decides herein to approve the settlement, the Court finds that Navistar's motion to shorten time is moot and that motion will be denied.

[6]Navistar states that it has an unsecured nonpriority claim in this Chapter 7 case, so it would receive a distribution along with other creditors in this case from the settlement.

[7]Specifically Navistar requests judicial notice be taken of the confirmed chapter 11 plans in Case Nos. 08-60892-11, 08-60893-11, and 08-60922-11.

claims as a substantial risk to JPT.

Kalafat testified that JPT's current condition is a little bit farther ahead than just "day to day," but that its condition was still very difficult because of high fuel prices and a shortage of drivers. He stated that JPT was ahead of its condition 6 months ago but "not out of the woods yet." Kalafat testified that this litigation was hurting JPT's ability to replace its ageing equipment. He testified that JPT does not agree with the allegations of fraud in the Trustee's complaint, but that the continued litigation cost and possible $2 million in liability JPT might have to pay if the Trustee prevails in the litigation were a "huge risk" to JPT.

Regarding Navistar's objection that the settlement imposed sole responsibility for payment of the $100,000 upon JPT, Kalafat testified that is not true, and that JPT made a "side agreement" with Palmer, as part of the mediation, in which JPT's obligations under the settlement would be offset by a reduction of one-half of the payments JPT was obligated to make to Palmer under their employment agreement, Ex. 1. He testified that the Trustee was not a party to the side agreement. Crum testified that she did not care who paid her the $100,000[8]. Kalafat testified that approval of this settlement helps JPT's ability to pay its other creditors.

**Crum Testimony**.

Crum testified that this adversary proceeding is a complex case. She testified that she thought she would recover something in this adversary proceeding, but she doubts that any recovery would be as beneficial to the estate as the $100,000 settlement. On the other hand she also testified that it was possible that she could lose on all counts, and that in her opinion going

---

[8]Crum testified that she rejected an offer from Palmer during the mediation to pay her from his payments under Ex. 1 because she did not want to wait several years for payment.

forward with this adversary proceeding would not produce a better result than settlement. She testified that the $100,000 settlement in an up-front payment was of much more benefit to creditors than a long term stream of payments, and that time was not on her side.

Crum testified that, during discovery, she learned that the Debtor was "underwater" at the time of the transfer by Palmer of the shares or interests in JPT, JPE, JPEII and JPEL to Gjorev and Kangrga. She testified that the values which she had thought existed in the companies, upon which she based her avoidance and fraudulent transfer claims in Counts I, II, III and IV, in fact were not what she assumed based upon an expert report produced in discovery on which Crum testified she relied when reaching a settlement.

Ex. 3 is the expert[9] report produced to Crum in discovery, entitled "Jim Palmer Trucking Group Valuation Analysis as of November 18, 2009." The expert's conclusion, found at page 34 of Ex. 3, is that the fair market value of the equity of Jim Palmer Trucking Group as of November 18, 2009, is stated as $0.

Crum testified that the other discovery which she performed in this adversary proceeding validated Ex. 3's conclusions that the purchase price paid by Gjorev and Kangrga was in line with the company's value, and further than JPT and the other companies were in financial difficulties and on the verge of refiling for bankruptcy protection, and her claims could become uncollectible and worthless. As a result of her discovery, Crum testified, she had to adjust her focus since the fraudulent transfer claims in Counts I, II, III, and IV did not have the value she thought they had, and she concluded that she was unlikely to recover against Gjorev and Kangrga because she was

---

[9]Ex. 3 identifies the expert as Clother & Head, P.S., certified public accountants and business advisors located in Seattle, WA.

going to lose on the first four counts of the complaint. She shifted her focus to her claim that the payments JPT made to Palmer under Ex. 1 were property of the estate under Count V.

With respect to collection of any judgment, Crum testified that she was worried about her ability to collect any judgment. Crum testified that she was worried about collection from JPT of any judgment because of the risk that JPT would fail as a ongoing business. She testified that this litigation had delayed JPT from replacing its ageing equipment, and if she attempted collection of a judgment against JPT and it failed as a business then she would have an uncollectible judgment.

Crum testified that collection of any additional funds from Palmer is unlikely because she already recovered and sold his assets[10] and there is nothing left to recover. Crum testified that she has no interest in undoing the underlying transaction between Palmer and JPT because in her opinion they have no value and she wants to close the case. With respect to Gjorev and Kangrga, Crum testified that she was concerned about difficulties in collecting any judgment from them because they are located out of state and she would have to spend estate assets to pursue collection.

Navistar's counsel asked Crum on cross examination what benefit the settlement would have to creditors, after payment of the Trustee's attorney's contingency fee and her Trustee's fee. Crum responded that getting a guaranteed $100,000 payment is better than getting nothing from a trial, and that Navistar will benefit by receiving a distribution from the settlement. Crum did not agree with Navistar's counsel that the settlement will be consumed by administrative expenses,

---

[10] With respect to Navistar's objection that she could have recovered more from Palmer based upon his taxes, Crum testified that she had no duty to file tax returns for a leasing company, as Palmer had requested, so she refused to incur the additional administrative expense.

but she testified that she has not yet calculated the distribution.

## DISCUSSION

The Trustee's Motion seeks approval of the Settlement Agreement and Release with the Defendant in Adv. No. 11-1 for the sum of $100,000. This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991) as follows:

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
> See also In re MGS Marketing, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The first factor is probability of success in the litigation. Crum's testimony and Ex. 3 provide uncontroverted evidence that her fraudulent transfer and avoidance claims in Counts I, II, III, and IV are unlikely to succeed, because Ex. 3 shows that the shares or interests in JPT and the

9

other entities which Palmer transferred to Gjorev and Kangrga had $0 value. Navistar did not offer any exhibits, and did not offer any expert witness testimony which contradicts Crum's testimony and Ex. 3. Therefore, the Court finds that the probability of success on the merits of Counts I, II, III, and IV is low. With respect to Count V Crum testified that she was confident she would prevail, but that was tempered by difficulties in collection, and she allowed that she might lose. The Court concludes that the first *A & C* factor weighs in favor of approving the settlement.

  The second *A & C* factor is the difficulties to be encountered in the matter of collection. Crum testified that she is worried about collection of any judgment. With respect to Gjorev and Kangrga, she testified that they are located out of state and she would not want to expend estate resources pursuing collection out of state. With respect to Count V, Crum testified that she was afraid that collection efforts would push JPT to refile for bankruptcy, and her judgment would become uncollectible. Kalafat's testimony supports Crum's conclusion. He testified that the pressure and costs of litigation have hampered JPT's recovery, and may cause it to fail as a business. Navistar offered no expert testimony or exhibits which could support a finding that there would be no difficulties in collection. The Court finds that the second *A & C* factor supports approval of the settlement.

  The third factor is the complexity of the litigation and the expense, inconvenience and delay necessarily attending it. Crum testified that the litigation would be complex and she wants the settlement approved so that she can close the case. No evidence exists in the record that the litigation would entail delay. However, Ex. 3 shows that the Trustee would have to employ an expert witness to refute the expert opinion Defendants produced in Ex. 3. Counts I, II, III, and IV

would require detailed expert testimony of business and equipment valuations to determine the factors involved in those counts. While not as compelling as the prior factors, under the third *A & C* factor the Court finds that the complexity and expense of the litigation warrant approval of the settlement.

The final factor is the "paramount interest of the creditors and a proper deference to their reasonable views of the premises." Navistar states that it is a creditor in this Chapter 7 case, and the Court therefore considers its view as a creditor in this case. Under the settlement the estate will receive $100,000, subject to the contingency fee of the Trustee's counsel and the Trustee's fee calculated under 11 U.S.C. § 326(a). The contingency fee under the settlement is at a lower rate than it would be after trial and appeal, and costs also will be less. Navistar objects that nothing will be left over after payment of the administrative costs, but Navistar offered no evidence to support that argument. As a creditor in this case, Navistar likely will receive a distribution under the settlement, while if the settlement is not approved a chance exists that Navistar will receive nothing. The Court does not consider Navistar's objection, as a creditor in this case, reasonable. With no other creditors objecting, the Court finds that the fourth *A & C* factor favors approval of the settlement.

Navistar also objects as a creditor in other chapter 11 cases, but the Court does not find that status relevant to the *A & C* factors. Navistar's citation to *Sportstuff* does not support its objection to the instant proposed settlement because *Sportstuff* is distinguishable in several respects. In *Sportstuff*, the 8th Circuit BAP reversed a bankruptcy court's approval of settlements on several grounds, including that the settlements were not in the best interests of the estate, but also and more importantly, as Navistar notes in footnote 6 of its objection, that the settlement in

*Sportstuff* would have imposed an injunction precluding non-settling parties from enforcing their rights against insurers. 430 B.R. at 179, 180-81. The BAP reversed in part based on procedural infirmity which deprived the non-settling parties from their right to a trial on the merits. *Id.*

In the instant adversary proceeding, by contrast, Navistar is not a party. While the estate releases the Defendants in the proposed settlement, the settlement agreement does not, and cannot, release the Defendants from any claims held by Navistar which are comparable to the vendors' claims in *Sportstuff*. As the Court noted at the hearing, Navistar may pursue its remedies against JPT based on contract.

The Court having found that all four *A & C* factors weigh in favor of settlement, the Court finds and concludes that the proposed settlement is fair and equitable and satisfies F.R.B.P. 9019(a).

**IT IS ORDERED** separate Orders shall be entered in conformity with the above overruling Navistar's objections, granting the Trustee's motions for approval of compromise settlement and approving the Settlement Agreement and Release attached to the motions.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana